UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TIMOTHY MILNE | CIVIL ACTION |
| VERSUS | NO. 24-1179 |
| WESTBANK FISHING, LLC | SECTION M (1) |

## <u>ORDER & REASONS</u>

Before the Court is a motion for summary judgment filed by defendant Westbank Fishing, LLC ("Westbank"), arguing that it is not obligated to provide plaintiff Timothy Milne with maintenance and cure because he failed to fully disclose his ongoing treatment for a chronic back problem on his preemployment questionnaires.[1]  Milne responds in opposition, arguing that he provided enough information to put Westbank on notice of his chronic back problems and that his prior medical history was not material to Westbank's hiring decision.[2]  Westbank replies in further support of its motion.[3]  Having considered the parties' memoranda, the record, and the applicable law, the Court denies Westbank's motion because it has not carried its summary-judgment burden of establishing beyond dispute that Milne intentionally misrepresented his medical condition and that his condition was material to Westbank's hiring decision.

## I.    BACKGROUND

This matter concerns a maritime personal injury.  In March 2022, Westbank first hired Milne to work as a seaman aboard one of its vessels for the 2022 fishing season, which runs from April to November.[4]    Westbank vetted Milne in part by having him complete medical

---

[1] R. Doc. 15.
[2] R. Doc. 17.
[3] R. Doc. 19.
[4] R. Docs. 15-1 at 5; 17 at 2.

questionnaires. On the first medical questionnaire dated March 28, 2022, Milne responded that he did not have any disabilities, long-term health problems, or adverse physical conditions, and he checked "no" next to "back/neck problems" on a list asking if he currently has, or previously had, certain medical conditions.[5] But, in response to a question asking if he "ever had back trouble or injury to [his] back, head or neck," Milne circled "yes" and wrote "back trouble" as an explanation.[6] In addition, on the workers' compensation medical questionnaire completed April 29, 2022, in response to an open-ended question asking about other medical conditions, Milne responded that he had degenerative disc disease that was diagnosed in 2021, and involved the "two bottom discs" of his spine.[7] But he also indicated that he was not receiving treatment, or taking medication, for the condition.[8] Milne successfully completed his first season with Westbank without incident.[9]

Then, in early 2023, Milne applied to Westbank to work aboard its vessels for the 2023 fishing season.[10] Westbank again had Milne complete the preemployment medical paperwork.[11] This time, on a form dated March 27, 2023, in response to a question about long-term health problems or adverse physical conditions, Milne reported that he had back issues.[12] However, he again checked "no" next to "back/neck problems" on a list asking if he currently has, or previously had, certain medical conditions.[13] In late March or early April 2023, Gustavo Chavarria, Westbank's human resources director, met with Milne to discuss Milne's responses regarding his

---

[5] R. Doc. 15-8 at 1-3.
[6] *Id.* at 2.
[7] R. Doc. 15-10 at 3.
[8] *Id.*
[9] R. Doc. 17-2 at 3.
[10] R. Doc. 17 at 5.
[11] *Id.*
[12] R. Doc. 17-6 at 1.
[13] *Id.* at 2.

low back issues.[14]  Milne explained that he had back problems before he went to work at Westbank for which he had undergone physical therapy and continued to follow a home exercise program, but that this condition did not prevent him from performing his job.[15]  According to Milne, Chavarria did not request any further information, nor another physical, and allowed Milne to return to work.[16]

On May 14, 2023, Milne was injured while working as the second engineer aboard the F/V *Mary Virginia*, a vessel owned and operated by Westbank.[17]  Milne alleges that as the vessel was preparing to depart from Westbank's dock, he slipped and fell in a slick substance, injuring his lower back and right wrist.[18]  After the accident, Chavarria performed an initial investigation that revealed that Milne fell approximately 12 feet from the gunnel of a purse boat onto the *Mary Virginia*'s main deck.[19]  Westbank approved maintenance at a rate of $490.00 every two weeks.[20] Westbank sent Milne for emergency medical treatment, which included exams of Milne's back, neck, and head.[21]  The tests did not show any fractures or injuries requiring special treatment.[22] Milne was referred to Dr. Scott Tucker for an orthopedic evaluation of his back and wrist.[23]  On September 7, 2023, Dr. Tucker cleared Milne to return to work without restrictions.[24]  Thereafter, Milne told his captain that he had back pain and could not work.[25]  He was diagnosed with back strain, and Westbank agreed to pay for treatment by a physician of Milne's choice.[26]  Milne chose

---

[14] R. Doc. 17-2 at 3.
[15] *Id.*
[16] *Id.*
[17] R. Doc. 2 at 2.
[18] *Id.* at 2-3.
[19] R. Doc. 15-1 at 2-3.
[20] *Id.* at 3.
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.* at 3-4.
[25] *Id.* at 4.
[26] *Id.*

Dr. Stephen Rynick, who has not recommended surgery.[27]  Westbank also sought a second opinion by Dr. Everett Robert, who does not believe Milne's back pain is attributable to any fall, but rather is related to preexisting conditions that date from September 2021.[28]  Dr. Robert, too, has not recommended surgery.[29]

On May 9, 2024, Milne sued Westbank seeking damages under the Jones Act and for maintenance and cure.[30]  Westbank now moves for summary judgment on Milne's maintenance-and-cure claim.

## II.    PENDING MOTION

Westbank argues that, pursuant to the *McCorpen* defense, Milne is not entitled to maintenance and cure because he materially misrepresented his chronic lower back condition on his preemployment medical questionnaires.[31]  According to Westbank, Milne's medical records show that, at the time he completed the preemployment medical questionnaires, he was receiving treatment for back problems, including physical therapy, and was having difficulty working as a rigger for another company.[32]  Specifically, Westbank argues that Milne, in response to the medical questionnaires dated March and April 2022, failed to state that he was actively participating in physical therapy, taking medication, and seeking a surgical recommendation for ongoing back problems and that he did not mention that he was having difficulty performing his job as a rigger at another company.[33]  Westbank contends that Milne's less than fulsome responses to the questions constitute "tepid disclosure" and a material misrepresentation of his back condition because he was diagnosed with back problems and was actively seeking treatment from a doctor

---

[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] R. Doc. 2 at 1-7.
[31] R. Doc. 15.
[32] *See* R. Doc. 15-1.
[33] *Id.* at 1-3, 5-6, 8-15.

4

and physical therapist at the time he completed the preemployment paperwork.[34]  Westbank further argues that, had Milne fully disclosed his back issues, Westbank would have required additional diagnostic tests and a more comprehensive medical examination prior to hiring him and likely would not have hired him.[35]

In opposition, Milne argues that he did not intentionally misrepresent his back problems during Westbank's preemployment vetting process and he made more than a "tepid disclosure."[36] He contends that he was not undergoing physical therapy for back problems when he completed the March 28, 2022 questionnaire because his last physical therapy appointment occurred before that date, on March 22, 2022, and he cancelled the appointment that was scheduled for April 6, 2022.[37]  Milne also states that he did not know of any diagnosis related to his back, other than degenerative disc disease, when he completed the paperwork.[38]  He points out that, at a February 26, 2022 preemployment physical, he reported that he had back trouble or injury to his back, head, or neck, indicating that he experienced lower back pain for which he took hydrocodone, and his spinal exam for the physical was "normal" and he was cleared to work without restrictions.[39]  He also emphasizes that he indicated he had back pain or degenerative disc disease on both the March 2022 and April 2022 questionnaires and on the one in 2023, which prompted the inquiry from Westbank's human resources director.[40]  According to Milne, these disclosures, taken together, constitute more than a "tepid disclosure" that certainly put Westbank on notice of his back issues.[41] Milne further argues that Westbank cannot satisfy the materiality prong of *McCorpen* because the

---

[34] *Id.* at 6-7, 15-17.
[35] *Id.*
[36] R. Doc. 17.
[37] *Id.* at 3-4.
[38] *Id.* at 4.
[39] *Id.* at 4, 14-15.
[40] *Id.* at 5, 14-15.
[41] *Id.* at 14-16.

2023 meeting with Chavarria did not result in his being sent for more tests or being held back from work, which, says Milne, demonstrates that Westbank would have hired him regardless of his disclosures.[42]

In reply, Westbank argues that Milne's affidavit continues to downplay the significance of his preemployment medical records, particularly an MRI that Westbank says proves he had a prior work injury.[43]  Westbank also contends that Milne's answers on the preemployment questionnaires were not forthcoming because he failed to disclose ongoing treatment, which, says Westbank, precludes him from receiving maintenance and cure.[44]

## III.    LAW & ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56.  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact.  *Id*. at 323.  If the moving party meets

---

[42] *Id.* at 16-18.  Milne concedes that Westbank can meet the third prong of *McCorpen* – namely, the existence of a causal link between the preexisting medical condition and the current injury or injuries.  *Id.* at 17.

[43] R. Doc. 19.

[44] *Id.* at 3 n.5, 9-10.

that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact.  *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The substantive law identifies which facts are material.  *Id*.  Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014).  Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment.  *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994).  In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence.  *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008).  Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment.  *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001).  Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial.  *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2).  Such

facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

## B. Maintenance and Cure

"'Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel.'" *Meche v. Doucet*, 777 F.3d 237, 244 (5th Cir. 2015) (quoting *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006)). "Generally, an employer 'must pay maintenance and cure to any seaman who becomes ill or suffers an injury while in the service of the vessel, regardless of whether either party was negligent.'" *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 301 (5th Cir. 2008) (quoting *Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1012 (5th Cir. 1994)). Maintenance entitles a seaman to a daily living allowance for food and lodging. *See In re 4-K Marine*, *L.L.C.,* 914 F.3d 934, 937 (5th Cir. 2019); *Hall v. Noble Drilling (U.S.) Inc.*, 242 F.3d 582, 586 (5th Cir. 2001). Cure entitles a seaman to necessary medical services. *See Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir. 1995).

An employer "is allowed to rely on certain legal defenses to deny a claim for maintenance and cure." *Johnson*, 544 F.3d at 301 (citing *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005)). One of these defenses was articulated by the Fifth Circuit in *McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547 (5th Cir. 1968). To establish the *McCorpen*

defense, an employer must show that (1) the seaman intentionally misrepresented or concealed medical facts; (2) the nondisclosed facts were material to the employer's decision to hire the seaman; and (3) a causal connection exists between the withheld information and the injury complained of in the lawsuit.  *Brown*, 410 F.3d at 171 (citing *McCorpen*, 396 F.2d at 548-49).

### 1. Intentional Concealment

The first prong of *McCorpen* is satisfied "where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired."  *McCorpen*, 396 F.2d at 549; *see Wimberly v. Harvey Gulf Int'l Marine, LLC*, 126 F. Supp. 3d 725, 732 (E.D. La. 2015) ("Failure to truthfully answer medical questions or expound upon a condition when requested by the employer in a medical questionnaire test can forfeit a seaman's right to maintenance and cure.").  The "intentional concealment prong of *McCorpen* is an essentially objective inquiry" which "neither necessarily turns on credibility nor requires a subjective determination." *Brown*, 410 F.3d at 174-75.

Here, Westbank has not carried it summary-judgment burden of demonstrating that Milne intentionally misrepresented or concealed material medical facts.  Milne indicated, in some way, that he had back issues on three separate forms.  At the preemployment physical in February 2022, he also informed the doctor of his back problems and taking hydrocodone.  While it is true that Milne did not specifically state on the April 2022 form that he had recently received physical therapy, and taken medications, for back trouble, he could have interpreted that question to mean at the time the form was completed and he maintains that he was not doing either of those things at that time.  On the current record, the Court cannot find that Milne intentionally misrepresented his medical condition.

2.  **Materiality**

Under the second prong of *McCorpen*, "[t]he fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis." *Brown*, 410 F.3d at 175.  A seaman's "history of back injuries is the exact type of information sought by employers." *Id.*  However, "[i]f an employee can show that even if undisclosed facts were material he or she would have been hired regardless, the employer is not entitled to the *McCorpen* defense," and "[a] genuine issue of fact exists when it is unclear whether an employer's hiring decision would be affected by knowledge of a potential employee's previous injuries." *Chapman v. Spartan Offshore Drilling, LLC*, 2016 WL 1393490, at *5 (E.D. La. Apr. 8, 2016) (first citing *McCorpen*, 396 F.2d at 551-52; and then citing *Jauch*, 470 F.3d at 212).

Again, Westbank has not carried it summary-judgment burden of demonstrating that Milne's alleged omissions from the forms were material to its hiring decision.  At the time Milne was initially hired in 2022, he had reported back issues on two forms and at the preemployment physical.  Westbank was clearly on notice that Milne had some form of back problem and could have inquired further.  Indeed, Westbank did inquire further prior to the start of the 2023 fishing season when its human resources director met with Milne.  But, after that meeting, Westbank allowed him to go to work anyway, without conducting any additional tests or examination.  As a result, on the current record, the Court cannot find that Milne's alleged nondisclosure was material to Westbank's hiring decision.

**IV.    CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that Westbank's motion for summary judgment on maintenance and cure

(R. Doc. 15) is DENIED.

New Orleans, Louisiana, this 14th day of January, 2025.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE