UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TIMOTHY MILNE | CIVIL ACTION |
| VERSUS | NO. 24-1179 |
| WESTBANK FISHING, LLC | SECTION M (1) |

## ORDER & REASONS

Before the Court is a motion *in limine* by plaintiff Timothy Milne to exclude the testimony of defendant's biomechanical expert, Marzieh Ardestani, Ph.D.[1] Defendant Westbank Fishing, LLC ("Westbank") responds in opposition.[2] Having considered the parties' memoranda, the record, and the applicable law, the Court denies the motion.

I.   BACKGROUND

This matter concerns personal injuries sustained by Milne while working as a second engineer aboard the F/V *Mary Virginia*, a vessel owned and operated by Westbank.[3] Milne alleges that on May 14, 2023, while performing a pre-voyage inspection of the *Mary Virginia* and its purse boats, he slipped on a slick substance and fell approximately 14 feet from the gunnel of a purse boat to the deck of the *Mary Virginia*, injuring his lower back and right wrist.[4] Milne received emergency medical treatment and was referred to Dr. Scott Tucker for an orthopedic evaluation of his back and wrist.[5] Dr. Tucker cleared Milne to return to work with no restrictions on September 7, 2023.[6] However, Milne told his captain that he could not work due to back pain.[7] Milne was

---
[1] R. Doc. 14.
[2] R. Doc. 18.
[3] R. Doc. 2 at 2.
[4] R. Docs. 2 at 3-3; 17 at 7-8.
[5] R. Doc. 15-1 at 3.
[6] *Id.* at 4.
[7] *Id.*

diagnosed with back strain and sought treatment from Dr. Stephen Rynick.[8]  Westbank sought a second opinion from Dr. Everett Robert, who performed an independent medical examination and opined that Milne's back pain is attributable to conditions predating the May 14, 2023 accident.[9]

On May 9, 2024, Milne sued Westbank seeking damages under the Jones Act and for maintenance and cure.[10]  To defend against Milne's claims, Westbank hired Ardestani, who holds a Ph.D. in mechanical engineering with special emphasis on human biomechanics and a certification in accident reconstruction, as a biomechanics expert.[11]  Ardestani visited the *Mary Virginia,* inspected the ship and purse boats as they were positioned at the time of the accident, and took photographs and measurements.[12]  She reviewed these photographs and measurements, schematic diagrams of the purse boat, deposition testimony, Dr. Robert's report, Milne's medical records, and scholarly articles to prepare her report.[13]  Ardestani explains in her report that she analyzed the mechanics of the fall to determine the forces that Milne would have experienced in a 14-foot fall.[14]  She posits that "Milne's account, describing a slip-induced fall, sliding down, bracing with right hand and landing on his lower back, cannot coexist within a single dynamic fall."[15]  Ardestani further opines that Milne most likely experienced a sliding fall, which "typically results in less forceful contact with the ground," as opposed to a slip-induced fall,[16] but concluded that, in either case, his "spine would not have experienced hyperflexion," which would have been necessary for the fall to cause his injuries.[17]

---

[8] *Id.*
[9] R. Docs. 15-1 at 4; 15-7.
[10] R. Doc. 2.
[11] R. Docs. 14-2; 14-3 at 3; 18-1 at 10, 18.
[12] R. Docs. 14-3 at 17; 18 at 3-4; 18-1 at 32.
[13] R. Docs. 14-3 at 17; 18-1 at 32.
[14] R. Docs. 14-3 at 11-12; 18-1 at 26-27.
[15] R. Docs. 14-3 at 12; 18-1 at 27.
[16] R. Docs. 14-3 at 13; 18-1 at 28.
[17] R. Docs. 14-3 at 14-15 (quote at 14); 18-1 at 29-30 (quote at 30).

## II. PENDING MOTION

In his motion *in limine*, Milne does not dispute that Ardestani is qualified to testify as an expert in biomechanics. Instead, Milne argues that Ardestani cannot offer opinions on medical causation and seeks to exclude or limit her testimony in that respect.[18] In particular, Milne contends that the following excerpts from Ardestani's report constitute impermissible opinions on medical causation:

> "In this case, the lower back may have made secondary contact with the surface, but there would have been no significant impact to the lower back as the legs and lower extremities would have absorbed most of the force. Without spinal hyperflexion, the mechanism for traumatic disc bulging was not present in this accident." … "Therefore, in the absence of any other traumatic injuries, the mechanism for structural aggravation or progression of spinal disc bulges was not present in the dynamics of the subject accident." … "Upon thorough examination of all the materials presented in this case, it has been determined that the structural injuries observed in the spinal discs are not aligned with the dynamics of the incident in question."[19]

In opposition, Westbank contends that this Court and the Fifth Circuit have "recognize[d] and approve[d] the methods used by Ardestani as a biomechanical engineer to form opinions on mechanical causation."[20] Westbank asserts that Ardestani relies on the medical conclusions of Dr. Robert, not her own.[21] Westbank also includes a description of the differences between mechanical causation and medical diagnosis, and recounts Ardestani's qualifications, noting that this Court has previously found her qualified to opine on biomechanical causation "[u]nder similar facts where the mechanism of a fall was questionable."[22] Westbank then argues that Ardestani's opinions are reliable and relevant[23] and concludes by refuting that her opinions regarding Milne's

---

[18] R. Doc. 14-1 at 3-4.
[19] *Id.* at 5 (quoting R. Doc. 14-3 at 14-16).
[20] R. Doc. 18 at 1-2 (quote at 2).
[21] *Id.* at 3.
[22] *Id.* at 7-8 (quote at 7) (citing *Ratliff v. Marquette Transp. Co. Gulf-Inland, LLC*, 2021 WL 2267645 (E.D. La. June 3, 2021)).
[23] *Id.* at 8-11.

3

injuries are medical opinions, asserting that the mechanism of Milne's injuries is relevant to her biomechanical causation analysis.[24]

## III.  LAW & ANALYSIS

### A. *Daubert* Standard

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court held that Rule 702 of the Federal Rules of Evidence requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93. In *Daubert*, the Supreme Court listed several nonexclusive factors for a court to consider in assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the

---

[24] *Id.* at 11-12.

methodology in the scientific community. *Id.* at 593-95. However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quotations omitted). In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Next, the district court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, *i.e.*, whether it is relevant. *Daubert*, 509 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003). Further, an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make[] factual determinations reserved for the trier of fact." *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014).

Rule 702 also requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the district court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact. *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded in part by statute on other grounds as noted in Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020). A witness qualified as an expert is not strictly confined to his area of practice but may testify regarding related

5

applications; a lack of specialization goes to the weight, not the admissibility of the opinion. *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195-96 (5th Cir. 2018).

The facts, data, and sources used in an expert's opinion are generally considered by the jury in weighing the evidence, but "in some cases 'the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion.'" *Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). As the gatekeeper, a district judge must "extract evidence tainted by farce or fiction. Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all." *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996). "Generally, the fact-finder is entitled to hear an expert's testimony and decide whether the predicate facts on which the expert relied are accurate. At the same time, however, expert testimony that relies on completely unsubstantiated factual assertions is inadmissible." *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (internal quotation marks, alterations, and citations omitted). Ultimately, the expert must "'bring to the jury more than the lawyers can offer in argument.'" *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986)).

**B. Analysis**

Milne does not contest Ardestani's qualifications to testify as an expert in biomechanics. As Westbank points out, this Court previously held in *Ratliff v. Marquette Transportation Company Gulf-Inland, LLC* that the methods and opinions of Ardestani are reliable and relevant and would help the trier of fact determine whether an accident could have caused a plaintiff's alleged injuries. 2021 WL 2267645 at *3. Just as in this case, Ardestani opined in *Ratliff*, based

6

on her review of "the facts, scene, and scholarly literature, and then employing principles of Newtonian physics, dynamics, mechanics, tissue mechanics, anatomy, and physiology," *id.*, that "the forces involved in the accident would not have caused the back conditions with which [the plaintiff] has been diagnosed." *Id.* at *1.

Milne specifically argues that Ardestani's report contains opinions on medical causation. This Court has also previously addressed this argument. In *Roth v. Sentry Insurance*, the defendants' biomechanics expert opined that the injured plaintiff's "neck and lower back issues [were] the result of degenerative changes as opposed to the subject accident." 2021 WL 3809090, at *3 (E.D. La. Aug. 26, 2021). The plaintiffs in *Roth*, like Milne, did not contest the expert's qualifications, but sought to exclude her testimony as offering impermissible medical opinions. *Id.* at *1. The Court held that the expert, who was not a medical doctor, was permitted to "explain the forces involved in the accident and whether those forces are likely to generate the types of injuries [the p]laintiffs allege," but that she "may not offer opinions about the *precise cause of a specific injury*, including, for example, that the injury was caused by degenerative changes, rather than a one-time traumatic event." *Id.* at *3 (emphasis added). Here, Ardestani explains the forces involved in Milne's fall[25] and addresses whether those forces were likely to have caused the injuries alleged by Milne[26] – as this Court has permitted biomechanics experts to do. *Id.* Unlike the expert in *Roth*, Ardestani does not opine on the "precise cause of a specific injury," but posits, as she did in *Ratliff*, that the forces of Milne's fall would not have caused his injuries.[27]

Thus, Ardestani's report is within the scope of her expertise in biomechanics. Any concerns Milne may have regarding the bases and sources of her opinions go to the weight, not

---

[25] *See* R. Docs. 14-3 at 11-13; 18-1 at 26-28.
[26] *See* R. Docs. 14-3 at 13-16; 18-1 at 28-31.
[27] *See* R. Docs. 14-3 at 4, 13-16; 18-1 at 19, 28-31.

7

admissibility, of the testimony and can be addressed through cross-examination and the presentation of countervailing expert testimony. Nevertheless, should Ardestani offer any testimony as to the "precise cause of a specific injury" or otherwise provide a medical opinion at trial, the Court will rule on contemporaneous objections to such testimony as they arise.

## IV.  CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Milne's motion *in limine* to exclude the testimony of Ardestani (R. Doc. 14) is DENIED.

New Orleans, Louisiana, this 16th day of January, 2025.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE